## Reagan Adoption

*Howard R. Berninger*, for petitioners.

KREISHER, P. J., March 22, 1954.—William C. Reagan and Mabel M. Reagan, his wife, on July 13, 1953, filed a petition praying that they be permitted to adopt

William Gene Reagan, the minor child of Margaret E. Davis. The court fixed July 27, 1953, at 2 p. m., as the time and the judge's chambers as the place for hearing, directing that 10 days' notice be given to Carl Davis, the husband of Margaret Davis, and to Margaret Davis.

At the time fixed for hearing petitioner, William C. Reagan, testified that he was born in Brandonville, Schuylkill County, Pa., December 26, 1882; that he married Mabel M. Reagan, the other petitioner, July 25, 1905, and has been a resident of Columbia County since 1903, being employed most of the time since in the American Car & Foundry Company of Berwick, that he is of the Protestant faith, and that four children were born as a result of petitioners' marriage. One of these children is now deceased and the other three are married and no longer making their home with petitioners.

From the testimony it appears that petitioners were separated during the late 1930's, during which period of separation petitioner, William C. Reagan, carried on a clandestine affair with a Mrs. Margaret Davis, which resulted in the birth of the child proposed to be adopted, who was born June 6, 1943. The mother of this child is married to Carl Davis and from whom she is apparently separated. Petitioner, William C. Reagan, has supported the child since his birth and the child is presently living in the home of petitioners, sharing a room with the male petitioner.

Sometime after the birth of this child petitioner entered a hospital and some sort of an operation was performed, and after his recuperation he patched up his differences with his wife, and he is now living with his wife at 301 Woodin Street, Berwick, Pa., which residence is owned by petitioners as tenants by the entireties.

The male petitioner, having been an employe of the American Car & Foundry Company for many years,

is now receiving Social Security benefits, and his heirs will upon his death be entitled to certain benefits, and petitioner gives as his reason for desiring to adopt the child that he wishes this child to reap those benefits.

The wife of petitioner testified that she signed the petition to adopt this child at the request of her husband, and when asked by the court how the natural-born children of this marriage felt about this adoption, answered as follows:

"Q. Do they have any knowledge of this proposed adoption?

"A. Yes, sir.

"Q. Do they have any objection to it?

"A. I don't know. I haven't talked to them about it."

Petitioner further testified when asked about her attitude toward this adoption, as follows:

"Q. Have you grown fond of this boy; do you love him?

"A. Yes, I like him all right, surely, as good as I can like any child. I like all children; I am fond of children. I have had my grandson with me since he was two years old. . . .

"Q. Are you and Mr. Reagan completely reconciled and on happy marital terms at the present time?

"A. Yes, I think so.

"Q. How many years has he been separated?

"A. About nine.

"Q. Does this boy appear to be happy and contented in your home?

"A. He appears to be. I wouldn't know how he feels.

"Q. Do you all eat at a common table?

"A. Oh, yes.

"Q. Do you prepare the meals?

"A. That's right.

"Q. You really think this is going to work?

"A. Oh it can. He has been with us.

"Q. You hold no animosity or ill-will or any hatred toward this boy?

"A. No. I don't feel that the child is responsible for anything."

There was offered into evidence and attached to the petition a consent to the adoption by the natural mother of this child, executed June 30, 1953, and signed "Margaret E. Davis". There is no consent by the husband of Margaret E. Davis, but there is testimony to the effect that the husband was separated from his wife, and he has never contributed toward the support of this child, nor has he recognized the child as his own. However, there is no proof of nonaccess during the period immediately prior to the birth of this child by the husband, and, therefore, there is a presumption that a child born of a married woman is the child of the husband.

The facts of this case being so unusual seem to justify the court in conducting an independent investigation, and the results of that investigation made by the Probation Office of Columbia County indicates that the welfare of this child would not be promoted by decreeing this adoption. Without going into detail of the facts reported to the court by the investigating officer, we should mention that the natural-born children of petitioners interviewed expressed serious dissatisfaction with the proposed adoption; that some of the close neighbors did not think the welfare of the child would be promoted, and the child himself when interrogated by the investigator at school stated he did not mind living at the Reagans, but he wanted his real mother to be his mother, and he at present calls Mrs. Reagan "Grandma Mae", so that it does not seem possible that a mother and son relationship would ever develop by decreeing this adoption. And further, when the investigator interrogated petitioner, Mrs. Reagan, she told him in confidence she was not in favor of the adoption, as the responsibility was too great for her at her age and her physical condition, and that her

marital status at present was not especially satisfactory.

The act of assembly gives the court the authority to conduct a private investigation of this nature, and to consider the results of the investigation in the determination of the case, and the act further provides that the court must find such facts so as to be satisfied that there is a real "desirability of the proposed adoption".

Therefore, we conclude since there is a presumption that this child proposed to be adopted is a legitimate child and the consent of the husband of the mother is not before the court, and the apparent reluctance of female petitioner and her natural-born children to look with favor upon this adoption, and the attitude of the child proposed to be adopted, that he still wants his real mother to be his mother, compels us to deny the prayer of the petition, and to this end we make the following

### Order

And now, to wit, March 22, 1954, the prayer of the petition of William C. Reagan and Mabel M. Reagan to adopt William Gene Reagan is hereby denied, and the petition is dismissed at the cost of petitioners.